# IN THE COURT OF APPEALS OF IOWA

No. 21-1551
Filed August 3, 2022

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**CLARENCE WIDNER,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Buchanan County, Melissa Anderson-Seeber, Judge.


　　A defendant appeals his conviction for sexual abuse in the third-degree.
**AFFIRMED.**


　　Richard Hollis, Des Moines, for appellant.

　　Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.


　　Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Clarence Widner appeals his conviction for sexual abuse in the third-degree, arguing that there is insufficient evidence to support his conviction. The record contains substantial evidence to support the conviction. We affirm.

I.      **Background Facts & Proceedings**

S.M., who was seventeen years old at the time of the criminal complaint, is diagnosed with ADHD, bipolar disorder, and fetal alcohol spectrum disorder. His frontal lobe is damaged because of drug use by his biological mother during her pregnancy. S.M. has an individual education plan and uses a para-educator at school. He takes several medications, one of which makes him sleep soundly. His mother informed the police that it can take about twenty minutes for S.M. to fully wake up the morning after taking this medication.

S.M. alleged Widner, age sixty-two at time of complaint, sexually abused him in 2019. The abuse began while Widner lived at S.M.'s mother's house for about a week in early summer 2019. Widner continued to visit during the day after he moved out.[1] Widner eventually moved in with S.M.'s brother.[2] S.M. spent the night at his brother's house at least two times—once about a week before Thanksgiving 2019, and another time around the Thanksgiving holiday.[3]

---

[1] Widner moved out of the house when the Iowa Department of Human Services informed S.M.'s mother that Widner could not live there as a registered sex offender.

[2] S.M.'s brother is the mother's biological child. S.M. was adopted by the mother as a young child.

[3] The record is unclear whether it was the Thursday or Friday of Thanksgiving week.

Widner began sexually abusing S.M. during the period of time Widner lived at S.M.'s mother's house. The abuse followed a consistent pattern. S.M. and Widner would watch movies together at night in one of their rooms. Widner would perform oral sex on S.M. and penetrate S.M.'s anus with his finger. The first night Widner tried to perform sexual acts on S.M., S.M. stopped him, saying, "No, we are never doing that." S.M. would later identify that the sexual abuse happened almost every day. S.M. explained that he did not tell anyone or try to stop it because Widner would get angry when S.M. refused his advances. Abuse also occurred the two nights S.M. stayed at his brother's residence. The last incident of abuse occurred during the Thanksgiving holiday. While S.M. was asleep, Widner performed oral sex on S.M. and penetrated S.M.'s anus with his finger. Widner masturbated while committing the abuse, ejaculating onto the floor. After he awoke, S.M. cleaned the floor with a mop, then threw the mop in the trash.

S.M. told his brother about Widner's abuse during Thanksgiving week. His brother, when later interviewed by the police, informed them that S.M. was nervous that the family would be angry with him and that Widner had threatened S.M. S.M. told his mother about the abuse. The mother confronted Widner, who told her to hit him. Widner offered to give the proceeds from the sale of his house to S.M. Finally, while packing his belongings at S.M.'s brother's house, Widner admitted to S.M.'s brother that everything S.M. said was true.

S.M. told his para-educator on December 2, 2019, about the abuse. The school contacted the police. A forensic interview was conducted, where S.M. detailed the abuse to staff at the Allen Child Protection Center. S.M. was examined by a nurse-practitioner. Police ultimately searched S.M.'s brother's home and

S.M.'s mother's home, taking two samples of a specimen found on the floor near S.M.'s bed. The samples were sent to the Division of Criminal Investigations for testing.[4] The police interviewed S.M.'s brother, S.M.'s mother, and Widner. Widner admitted to sexual contact with S.M. but informed law enforcement that the contact was initiated by S.M. and was consensual.

On January 14, 2020, the State charged Widner by trial information with two counts of sexual abuse in the third degree, in violation of Iowa Code sections 709.1, 709.4(1)(a) and (d) (2019). The State amended the charges to a single act of sexual abuse in the third degree, in violation of sections 709.1 and 709.4(1)(a). Widner agreed to proceed to a trial on the minutes of testimony, which included reports by and testimony from a Jesup police officer and a Buchanan County Sheriff's deputy who investigated the abuse, the forensic interviewer, S.M.'s principal, the nurse practitioner who examined S.M., S.M.'s mother and brother, and S.M. The court found Widner guilty as charged. Because of two prior convictions of lascivious acts with a child, Widner was sentenced to life in prison pursuant to Iowa Code section 902.14(1). Widner appeals.

## II.     Standard of Review

We review challenges to the sufficiency of evidence supporting a conviction for correction of legal errors. *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020). A conviction will be upheld if substantial evidence supports it. *Id.* "Evidence is substantial 'if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable

---

[4] The results of the tests are not in the record.

doubt.'" *Id.* (quoting *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019)). Direct and circumstantial evidence are equally probative. Iowa R. App. P. 6.904(p).

**III.     Discussion**

Widner's sole challenge on appeal is directed at the sufficiency of the evidence to support his conviction. In particular, he points to the lack of physical evidence establishing that a sex act occurred, questions the victim's credibility, and denies making statements admitting to the acts underlying his conviction. We reject Widner's trifecta of legal arguments.

First, the State need not put forward physical evidence to sustain a conviction. *State v. Donahue*, 957 N.W.2d 1, 10-12 (Iowa 2021) (finding sufficient evidence for a conviction of sexual abuse in the third degree despite an absence of physical evidence). S.M.'s testimony alone could be sufficient to uphold the conviction. *Id.* at 10-11; *State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995) ("The law has abandoned any notion that a rape victim's accusation must be corroborated"). The lack of physical evidence is not dispositive to this case.

Widner's argument about S.M.'s lack of credibility is similarly without merit. S.M. was more forthcoming with some individuals than others. He initially told his principal that the abuse only occurred once. And there were minor deviations in the timeline between witnesses. For instance, it is unclear whether an incident between S.M. and Widner occurred on the Thursday or Friday of Thanksgiving. But S.M. was generally consistent in describing the circumstances of the sexual abuse, including the time periods, locations, and actions. Such consistency is evident in the statements he provided to his brother, the school principal, and the forensic interviewer. And as our supreme court explained in *Donahue*,

"Inconsistencies and lack of detail are common in sexual abuse cases and do not compel [a fact-finder] to conclude that the victim is not credible or that there is insufficient evidence to support a guilty verdict." 957 N.W.2d at 11.

Widner claims S.M.'s mental illnesses and brain trauma limit his ability to accurately form and recall memories. However, the court reasonably found S.M. to be more credible than Widner. Unlike S.M.'s consistent version of events, Widner's version of events constantly shifted during his police interview: he initially denied any sexual contact with S.M., then suggested S.M. instigated the contact but Widner refused, then changed his story again to concede that he willingly participated in the contact, only to finally admit that he may have pushed for sexual contact against S.M.'s wishes or "went too far." Widner's variation on events supports the court's conclusion regarding credibility.

Finally, Widner denies making statements to S.M.'s mother, brother, and law enforcement implicating him in the sexual abuse. The district court was well within its discretion to credit the statements reflected in the minutes of testimony. Widner forewent the opportunity to cross-examine those witnesses by accepting a trial on the minutes of testimony. That strategy meant risking that the court would believe statements whose credibility might otherwise be undermined. Under our standard of review, we view the evidence in the light most favorable to the State. The court did not commit error by crediting the statements of those witnesses.

We turn next to Widner's broader claims challenging the sufficiency of the evidence. In order to sustain Widner's conviction, two elements must be met: (1) the defendant committed a sex act with another person and (2) the act was "done

by force or against the will" of the other person. *See* Iowa Code § 709.4(1)(a). Widner contests both elements.

Substantial evidence supports the district court's conclusion that Widner committed a sex act with S.M. As relevant here, a "sex act" is defined as "any sexual contact between two or more persons" "between the mouth [of one person] and genitalia [of another]" or "between the finger, hand, or other body part of one person and the genitalia or anus of another person." Iowa Code § 702.17. First, as stated above, S.M. described instances of Widner performing oral sex on S.M. while penetrating his anus with his finger. Such conduct constitutes a sex act. Widner admitted to the police that he had engaged in oral sex with S.M. and rubbed his anus. Substantial evidence supports the court's findings.

Substantial evidence also supports the court's conclusion that Widner committed the sex acts by force or against S.M.'s will. On the first occasion Widner tried to instigate sexual contact with S.M. by pulling down his pants and attempting to engage in oral sex, S.M. told Widner "No, we are never doing that." Despite S.M.'s protests, he awoke to find Widner "licking his butt." The conduct was against S.M.'s demands,[5] and also occurred during a state of unconsciousness. *See* Iowa Code § 709.1(1) (noting that an act done during a state of unconsciousness is done against the will of the other person). Widner committed similar acts around Thanksgiving, when S.M. awoke to a wet spot on the floor. Widner explained that he had been masturbating while performing oral sex on S.M.

---

[5] S.M. informed the forensic interviewer of several other instances of sexual contact occurring forcefully, including when S.M. tried to push Widner away but Widner pushed back, and one instance when Widner covered S.M.'s mouth to stop him from shouting for his mother.

and penetrating S.M.'s anus with his finger.  Finally, S.M. explained to his brother that Widner threatened to hurt him if he told anyone about the abuse.  Iowa Code § 709.1 (explaining that consent or acquiescence by the other person procured by threats is not valid consent).  And Widner told S.M.'s brother that everything S.M. reported was true and conceded to police that he possibly "went too far" at times. Substantial evidence supports the conviction.

**AFFIRMED.**